UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| LATONYA M. CLAVIELLE, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Case No. 11-2224 |

**OPINION**

Petitioner, Latonya M. Clavielle, filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#1) on September 14, 2011.[1] On September 18, 2011, Petitioner filed an Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#4). Petitioner filed a Letter (#3) with her Amended Motion (#4) requesting that this court disregard her Initial Motion (#1), therefore this court entered a Text Order vacating Petitioner's Initial Motion (#1). On October 21, 2011, the government filed its Response (#6) to the Petitioner's Amended Motion Pursuant to 28 U.S.C. § 2255. On November 16, 2011, Petitioner filed a Reply (#8). For the following reasons, Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#4) is DENIED.

---

[1]According to the prison mailbox rule, Petitioner's Motion was filed on September 14, 2011, instead of the date it was electronically filed on September 21, 2011. Houston v. Lack, 487 U.S. 266, 270 (1988); see also Jones v. Bertrand, 171 F.3d 499, 502 (7th Cir. 1999) (extending the prison mailbox rule to prisoners filing *pro se* habeas corpus petitioners).

## BACKGROUND

At some point in 2008, a fraud investigator for a credit card company became suspicious after noticing that the company had received multiple credit card applications from the same two mailing addresses. An investigation into the use of the credit cards revealed that Petitioner was using a number of credit cards, none of which were issued to Petitioner's legal name. In fact, the investigation produced a video of Petitioner using a credit card, that was not in her name, to make purchases and cash withdrawals. Further investigation revealed that Petitioner was obtaining credit cards by falsifying personal records, using a wide array of variations of names, birth dates, and Social Security numbers, including those of her three minor children as well as two minor children of an ex-boyfriend. From the evidence offered at trial, Petitioner submitted 162 credit card applications and had 31 of these applications accepted by four different credit card companies.

Petitioner was indicted by a federal grand jury on December 2, 2008, on three counts of mail fraud in violation of 18 U.S.C. § 1341 and four counts of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A. On January 28, 2009, Assistant Federal Defender John Taylor ("Taylor") was appointed to represent Petitioner. Petitioner proceeded to a jury trial. At trial, the government offered the following witnesses: (1) Keri Ward, a fraud investigator from Capital One; (2) Inspector Tyler Mower, from the U.S. Postal Inspection Service; (3) Detective Jonathan Seiler, from the Mattoon Police Department; (4) Postmaster Cecil Alan Thornton, from the U.S. Postal Service; (5) Inspector Susan Lidtke, from the U.S. Postal Inspection Service; (6) Corey Clayton, Petitioner's ex-boyfriend, who testified that Petitioner

visited her in Ohio and went to retail stores and purchased items on a credit card, and also testified that he did not give Petitioner permission to use his daughters' names and Social Security numbers to apply for credit cards; and (7) Dorothy J. Rankin, a woman who shared a cell with Petitioner at the Champaign County Jail, who testified that Petitioner told her that she had used different alias names for credit cards, generally based on family members' names, to obtain credit cards under false identifications. During Clayton's direct-examination, the government brought out Clayton's prior convictions for drug related offenses. Taylor did not cross-examine Clayton. Taylor cross-examined Rankin by establishing that she was eager to leave jail early and therefore initiated the conversation with authorities about Petitioner's statements, and in fact was able to leave jail early as a result of her assistance. Taylor's cross-examination clearly established that Rankin had something to gain from her testimony. After the government closed its case-in-chief, the Petitioner decided not to offer any evidence.

In closing arguments, Taylor argued that there was reasonable doubt that Petitioner was guilty. Specifically, as he argued in opening statements, Taylor explained that although there was undisputable evidence directly tying Petitioner to the use of fraudulent credit cards and to living at the address where fraudulent cards were mailed to and were found, that it was possible that she was an unwitting participant in the scheme—namely that her family members applied for the cards and then gave her the cards to use on their behalf. On March 31, 2010, Petitioner was found guilty of three counts of mail fraud in violation of 18 U.S.C. § 1341 and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A.

On July 9, 2010, this court held Petitioner's sentencing hearing. At the hearing, the government dismissed the final two counts of aggravated identify theft, and recommended that Petitioner be sentenced to a term of 85 months imprisonment. Taylor recommended that Petitioner be sentenced to no more than 61 months imprisonment, basing his argument on the fact that Petitioner had a very difficult upbringing. Petitioner spoke on her own behalf and requested lenience, arguing that she understood her mistakes and would not make them again. This court sentenced Petitioner to an advisory guideline sentence of 37 months imprisonment on each of the three counts of mail fraud, to be served concurrently, and to the statutory required mandatory minimum sentence of 24 months imprisonment on the two counts of aggravated identify theft, to be served concurrent to each other but consecutive to the counts of mail fraud, for a total of 61 months' imprisonment. This court also ordered restitution in the amount of $42,169.05.

On July 12, 2010, Petitioner filed a timely notice of appeal to the Seventh Circuit Court of Appeals. On appeal, Petitioner argued that her loss amount was incorrectly calculated because it included not only the credit card debt incurred by the Petitioner, but also the additional interest and fees, resulting in an incorrect sentence and order of restitution. On August 16, 2010, the Seventh Circuit affirmed this court's judgment and sentence.[2] On September 14, 2011, Petitioner filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#1). On September 18, 2011, Petitioner filed an

---

[2] The Court explained that this court incorrectly calculated the loss for purposes of sentencing, however even though the calculation was incorrect, the guideline calculation did not change therefore there was no plain error.

Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#4).

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

The United States Supreme Court has explained that the benchmark for judging a claim of ineffective assistance of counsel is whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). For a claim of ineffective assistance of counsel to justify reversal of a conviction, the petitioner must "prove both (1) that his counsel's performance was objectively unreasonable and (2) that he suffered prejudice as a result." Watson v. Anglin, 560 F.3d 687, 690 (7th Cir. 2009) (citing Strickland, 466 U.S. at 687). To demonstrate that counsel's performance was objectively unreasonable, the movant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. First, the movant must establish specific acts or omissions giving rise to a claim of ineffective assistance, then the court must determine whether such acts or omissions are in fact "outside the wide range of professionally competent assistance." Wyatt v. United States, 574 F.3d 455, 458 (7th Cir. 2009). To satisfy the prejudice "prong," the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Petitioner argues that Taylor, her trial counsel, rendered ineffective assistance by a variety of acts and omissions—which can be grouped into the following claims: (1) comments made by Taylor suggesting Petitioner's guilt during opening statements; (2) failure to object to Rankin as a witness and poor cross-examination; (3) generally failing to object to evidence of guilt offered by the government and "complimenting" the Assistant United States Attorney; (4) failure to cross-examine Clayton; (5) failing to offer an adequate closing argument; (6) failure to object to evidence related to the two counts dropped at sentencing; (7) failure to inform the jury of Petitioner's employment; (8) failure to object to the Presentence Report; and (9) failure to recommend the lowest possible sentence at the sentencing hearing. Each of these claims will be discussed in turn.

### A. *Ineffective for Comments made during Opening Statement*

Petitioner's first claim, that Taylor was ineffective for comments he made during his opening statement, fails on the merits. Petitioner appears to argue that Taylor was ineffective by implying that she was guilty.[3] Petitioner's argument not only is unsupported by the record, but Petitioner has failed to demonstrate that Taylor's strategy to concede certain facts while creating a possible scenario where the jury could have found that Petitioner did not have knowledge of the fraudulent credit card applications fell outside the range of professional behavior considering the government's evidence at trial. There was evidence in this case that could not be disputed and directly tied Petitioner to at least the possession and

---

[3]Petitioner failed to cite any specific language in Taylor's opening that supports her assertion, which is a recurring theme in Petitioner's Amended Motion, nevertheless, this court has reviewed the record to ensure that Taylor performance was objectively reasonable.

use of fraudulently obtained cards. Taylor, quite reasonably, argued that in spite of this, Petitioner might have unwittingly used cards given to her by family members, without knowledge of their fraudulent nature. This argument certainly does not imply Petitioner's guilt, but rather, acknowledges the evidence and creates a possible alternative story that would allow the jury to acquit Petitioner of the charges. Moreover, even if this court found that Taylor's conduct was unreasonable, Petitioner was not prejudiced by Taylor's opening statement, as there was overwhelming evidence that confirmed the acknowledgments made by Taylor about Petitioner's possession and use of the credit cards.

### B. *Failure to Adequately Cross-Examine Dorothy Rankin*

Petitioner's second claim, that Taylor was ineffective for failing to object to Rankin as a "surprise witness" and by inadequately cross-examining her, also fails on its merits. First, the government filed a witness list which contained Rankin as a possible witness on March 12, 2010, over two weeks prior to trial. Any objection to Rankin as a "surprise witness" would have been frivolous, therefore Taylor's decision not to object on this basis was clearly reasonable. With regards to Taylor's strategy on cross-examination, Petitioner appears to claim ineffectiveness based on his comment that Rankin seemed like a "nice gal." Without question, it is not unreasonable conduct to treat a witness on cross-examination with respect and courtesy. Reviewing the record makes it clear that Taylor's strategy during his cross-examination was to demonstrate that Rankin's testimony regarding Petitioner's statements might have been motivated by a desire to leave prison early. Taylor's cross-examination made it clear that although Rankin might have been a nice person, the credibility of her

7

testimony might be lacking because she had motivation to provide false testimony if that would allow her to leave jail early. Accordingly, Petitioner is unable to demonstrate that Taylor's failure to object to Rankin as a witness or his cross-examination of Rankin was objectively unreasonable.

### C. *General Failure to Object to Evidence*

Petitioner's third claim, that Taylor was ineffective for failing to object to evidence offered to prove Petitioner's guilt, clearly fails on the merits. Petitioner's claim does not refer to any evidence that was arguably objectionable, therefore this claim fails for lack of any specificity or support for her clam. <u>See, e.g.</u>, <u>United States v. Turcotte</u>, 405 F.3d 515, 537 (7th Cir. 2005). Additionally, Petitioner's related argument that Taylor was ineffective for complimenting opposing counsel's performance fails on its merits. This court agrees with the government that it is not objectively unreasonable trial strategy to make comments complimenting opposing counsel's performance. Moreover, even if this court found that such comments were unreasonable trial strategy, Petitioner has failed to demonstrate any prejudice from these comments, as there is no evidence that jurors relied on Taylor's compliments instead of applying the law, as instructed by this court, to the overwhelming evidence offered in this case by the government.

### D. *Failure to Cross-Examine Corey Clayton*

Petitioner's fourth claim, that Taylor was ineffective for failing to cross-examine Clayton, similarly fails. On direct-examination, Clayton: (1) testified that he had lived with Petitioner for a period of time before moving to Ohio for work; (2) testified that he did not

give permission to Petitioner to use his daughters' Social Security numbers; (3) identified a document seized from Petitioner's residence that contained his daughters' Social Security numbers; (4) testified that Petitioner had visited him in Ohio and used a credit card at various retail locations; and (5) acknowledged that he had two prior felony convictions. Taylor chose not to cross-examine Clayton. Petitioner argues that this decision was unreasonable, however her only explanation as to why this was unreasonable is that his testimony was different than his "prior statement." However, Petitioner does not explain what his "prior statement" was or whether Taylor was aware of any "prior statement." Based on the argument advanced by the Petitioner, this court finds that Taylor's decision was not objectively unreasonable—as it is not clear what could have been accomplished on cross-examination, rather than to emphasize Clayton's testimony, because his convictions were already brought out on direct-examination. Moreover, even if this was unreasonable, Petitioner has failed to demonstrate that the failure to cross-examine Clayton was prejudicial.

### E. *Ineffective Closing Argument*

Petitioner's fifth claim, that Taylor was ineffective based on his closing arguments, also fails. Petitioner argues that there were three aspects of Taylor's closing argument that were deficient: (1) that Taylor acknowledged Petitioner's guilt; (2) that Taylor made inappropriate racial comments; and (3) that Taylor made references to the financial crisis which started in 2007. The first two aspects are simply not supported by the record—this court has thoroughly reviewed Taylor's closing argument and Taylor certainly did not

9

acknowledge Petitioner's guilt, but rather advanced a possible explanation for her innocence in spite of the overwhelming evidence against her. Additionally, Taylor did not make any inappropriate racial comments but rather, in an attempt to develop an innocent explanation for the overwhelming evidence of Petitioner's possession and use of fraudulent credit cards, argued that it was common for low-income individuals to move around frequently and leave some of their belongings behind with others. This argument was made to support the innocent explanation that someone else had obtained the credit cards and left them at Petitioner's home. Therefore, this court finds that Taylor did not make inappropriate racial comments, but rather, made an objectively reasonable argument to represent Petitioner.

The third aspect of Taylor's closing argument that Petitioner argues was ineffective was his reference to the financial crisis. This argument also lacks merit, as Taylor's reference to the financial crisis was an attempt to emphasize the ease of obtaining credit during the time in question. Taylor appears to have made this reference to emphasize that it was not uncommon for a person to be able to obtain a high number of credit cards, and therefore it was possible that someone else that lived with Petitioner might have obtained the credit cards, not the Petitioner. Regardless of the strategy behind the comments, this court finds that it was not objectively unreasonable to refer to the financial crisis in this case.

### F. *Failure to Object to Evidence Related to Dismissed Counts*

Petitioner's sixth claim, that Taylor was ineffective for failing to object to the introduction of evidence relating to counts that were dismissed at sentencing, also fails on the merits. Petitioner argues that Taylor should have objected, on the basis of relevance, to

introduction of evidence that Petitioner used the names "Latavia Moore" and "Karen Stubbs," and the associated Social Security numbers, to obtain fraudulent credit cards. The government, correctly, explains that any objection to the introduction of this evidence on the basis of relevance would have been overruled. Specifically, the three counts of mail fraud required that the government prove that Petitioner knowingly devised a scheme to defraud or obtain money or property by means of false pretenses, representations, or promises. Therefore, any evidence relevant to the overall scheme would be admissible, even if it was not related to the specific counts of mail fraud or aggravated identity theft charged. Accordingly, the decision not to make an objection was not objectively unreasonable, as it would have been overruled by this court. Moreover, even if it was unreasonable not to challenge this testimony, it would not have been prejudicial because any objection would have been denied and the jury would have heard the evidence.

### G. *Failure to Introduce Evidence of Petitioner's Employment*

Petitioner's seventh claim, that Taylor was ineffective for failing to introduce evidence at trial that Petitioner was self-employed as an exotic dancer, is completely without merit. As the government points out, due to her self-employment, the only way to introduce this evidence would be to have called Petitioner as a witness, subjecting her to cross-examination and the possibility that the jury would discover her criminal record. Additionally, it is certainly questionable whether introducing evidence of her employment would actually have provided any benefit to Petitioner as it has limited, if any, probative value, and in fact, it seems like there was an equal risk that this would have hindered

11

Petitioner's case. Nevertheless, it is clear that failing to introduce this evidence in this case was not objectively unreasonable, and in fact, was more likely to be the correct strategy in light of the risks of subjecting Petitioner to cross-examination.

## H. *Failure to Object to the Presentence Report*

Petitioner's eighth claim, that Taylor was ineffective for his failure to object to the Presentence Report fails. First, Petitioner's argument that Taylor should have objected to the amount of restitution calculated fails because Petitioner is unable to demonstrate prejudice. Specifically, Petitioner challenged the order of restitution on direct appeal and the Seventh Circuit found that the restitution amount was correctly calculated. Any objection by Taylor would have been denied and therefore Petitioner was not prejudiced by Taylor's decision not to object. Second, Petitioner argues that Taylor should have objected to the calculation of her criminal history points because she did not serve jail time for two of the prior convictions. This argument is without merit as points were properly assessed under Section 4A1.1(c) of the Sentencing Guidelines, regardless of whether the convictions were misdemeanors or violent crimes or whether Petitioner had to spend time in jail as a result of the convictions. Any objection on to the Presentence Report based on Petitioner's arguments would have been frivolous and denied by this court, therefore Taylor's decision not to object was not unreasonable.

## I. *Failure to Recommend Minimum Sentence*

Petitioner's final claim, that Taylor was ineffective for his failure to recommend to this court that Petitioner only receive one day imprisonment on the three counts of mail fraud

also fails. Petitioner argues that Taylor should have asked this court to deviate from the advisory guidelines and sentence Petitioner to only one day imprisonment on the three counts of mail fraud, even though the advisory guideline range of imprisonment for these three counts was 30 to 37 months. Although Taylor certainly was free to make this argument, as the government correctly notes, arguing for such a sentence was just as likely to harm the Petitioner as it would have been to assist her.

Specifically, the government recommended at the sentencing hearing that Petitioner be sentenced to a term of 85 months imprisonment—37 months on the three counts of mail fraud and 24 months to be served consecutively on each of the two counts of aggravated identity theft. In his recommendation during the sentencing hearing, Taylor focused his recommendation on the two counts of aggravated identify theft, rather than the appropriate sentence on the three counts of mail fraud. Taylor recommended that this court sentence Petitioner to concurrent terms of imprisonment for the two counts of aggravated identity theft, which if accepted by this court, would result in a sentence 24 months below the government's recommendation. This court was persuaded by Taylor's argument and accepted his recommendation, sentencing Petitioner to the statutorily required mandatory minimum sentence of 24 months imprisonment on the two counts of aggravated identify theft, to be served concurrent to each other. On the other hand, if Taylor focused his argument on the three counts of mail fraud, it was likely that at best, this court would have been persuaded to sentence Petitioner on the low end of the advisory guideline range which was 30 months, only 7 months lower than the high end of the range. Therefore, it was

reasonable for Taylor to focus on whether Petitioner would have to serve the two counts of aggravated identity theft consecutively or concurrently, which had a possible impact of 24 months imprisonment, rather than on the mail fraud counts which only had a 7 month range based on the advisory guidelines. Petitioner has failed to demonstrate that Taylor's decision not to recommend a one-day sentence on the three counts of mail fraud was objectively unreasonable, and moreover, even if she was able to, she has not demonstrated that his failure to make this argument actually was prejudicial.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, this court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may only be issued where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). If the district court denies the certificate a petitioner may request that a circuit judge issue one. Fed. R. App. Proc. 22(b)(1). This court concludes that Petitioner has not made the required "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3). Accordingly, this court declines to issue a certificate of appealability.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant

to 28 U.S.C. § 2255 (#4) is DENIED.

(2) Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.

(3) This case is terminated.

ENTERED this 19th day of January, 2012

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE